UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| LISA FOSTER, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | Civil No. 5:18-cv-00382-GFVT |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| NANCY A. BERRYHILL, | ) | **&** |
| Acting Commissioner of Social Security, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

Lisa Foster seeks judicial review of an administrative decision of the Commissioner of Social Security, which denied her claim for disability benefits. Ms. Foster brings this action pursuant to 42 U.S.C. § 405(g), alleging error by the ALJ considering the matter. The Court, having reviewed the record and for the reasons set forth herein, will **DENY** Ms. Foster's Motion for Summary Judgment and **GRANT** the Commissioner's.

**I**

Ms. Foster filed an application for a period of disability and disability insurance benefits on October 21, 2014. [Transcript (hereinafter, "Tr.") 11.] Ms. Foster's Motion for Summary Judgment alleges a disability beginning on June 22, 2013, due to peripheral artery disease, coronary artery disease, degenerative arthritis, osteoarthritis, claudication in the lower extremities, meniscus tear and diabetic neuropathy. [R. 10 at 3.] Ms. Foster's application was denied initially and upon reconsideration. *Id.* At Ms. Foster's request, an administrative hearing was conducted before Administrative Law Judge Roger L. Reynolds on May 15, 2017. [Tr. 11.] During the hearing, the ALJ heard testimony from Tina Stambaugh, an impartial vocational

expert, as well as Ms. Foster. [Tr. 11.]

In evaluating a claim of disability, an ALJ conducts a five-step analysis. *See* 20 C.F.R. § 404.1520.[1] First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is "disabled." 20 C.F.R. § 404.1520(d). Before moving to the fourth step, the ALJ must use all the relevant evidence in the record to determine the claimant's residual functional capacity (RFC), which is an assessment of one's ability to perform certain physical and mental work activities on a sustained basis despite any impairment experienced by the individual. *See* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545.

Fourth, the ALJ must determine whether the claimant has the RFC to perform the requirements of her past relevant work, and if a claimant's impairments do not prevent her from doing past relevant work, she is not "disabled." 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is "disabled." 20 C.F.R. § 404.1520(f).

Through Step Four of the analysis, "the claimant bears the burden of proving the

---

[1] The Sixth Circuit summarized this process in *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003):
> To determine if a claimant is disabled within the meaning of the Act, the ALJ employs a five-step inquiry defined in 20 C.F.R. § 404.1520. Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work, but at step five of the inquiry, which is the focus of this case, the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile.

*Id.* at 474 (internal citations omitted).

existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At Step Five, the burden shifts to the Commissioner to identify a significant number of jobs that accommodate the claimant's profile, but the claimant retains the ultimate burden of proving his lack of residual functional capacity. *Id.*; *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008).

In this case, the ALJ determined that Ms. Foster was not disabled under the Social Security Act. [Tr. 20.] At Step 1, the ALJ found that Ms. Foster has not engaged in substantial gainful activity since the date of October 21, 2014, the date she submitted her application for disability benefits. [Tr. 14.] At Step 2, the ALJ found that Ms. Foster had the six following severe physical impairments: (i) insulin dependent type II diabetes mellitus with possible neuropathy in the hands and feet; (ii) peripheral arterial disease with stents to the left common iliac, right femoral and left subclavian arteries; (iii) coronary artery disease, status post PTCA; (iv) obesity; (v) degenerative joint disease, right ankle; and (vi) degenerative disease, bilateral knees. *Id.* At Step Three, the ALJ determined her combination of impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404 or Part 416. *Id.* at 16-17. Before moving on to Step Four, the ALJ considered the record and determined that Ms. Foster possessed the following residual functioning capacity:

> [Ms. Foster] has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except she requires a sit stand option with the ability to change position briefly every hour for less than five minutes every hour, no standing or walking in excess of one hour without interruption, no standing or walking in excess of two hours total in an eight hour day, no sifting in excess of one hour in an eight hour day without interruption, no sitting in excess of 6 hours total in an eight hour day; no climbing of ropes, ladders or scaffolds; occasional climbing of stairs or ramps; frequent stooping, kneeling, crouching or crawling; no operations of foot pedal controls; frequent handling or fingering with the left upper extremity; no exposure to concentrate temperature extremes, excess humidity;

3

> concentrated vibration or industrial hazards; may require use of a cane for prolonged ambulation.

*Id*. at 18. After explaining the RFC, the ALJ found at Step Four that, based on her RFC, age, education and work experience, Ms. Foster was not capable of performing past relevant work experience as a self-employed babysitter and motel housekeeper. *Id.* at 19. Nonetheless, given Ms. Foster's RFC, the ALJ assessed that there are a significant number of jobs available in the national economy which Foster can perform. *Id.* at 19. The ALJ then issued an unfavorable decision to Foster, finding that she has not been under a disability as defined by the Act. *Id.* at 20. The Appeals Council denied Foster's appeal of the ALJ's decision. *Id.* at 8.

## II

This Court's review is generally limited to whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Shelman v. Heckler*, 821 F.2d 316, 319-20 (6th Cir. 1987). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Richard v. Perales*, 402 U.S. 389, 401 (1971)). The substantial evidence standard "presupposes that there is a zone of choice within which [administrative] decision makers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In determining the existence of substantial evidence, courts must examine the record as a whole. *Cutlip*, 25 F.3d at 286 (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). However, courts are not to conduct a *de novo* review, resolve conflicts in evidence, or make credibility determinations. *Ulman v. Comm'r of*

*Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988). If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *See Ulman*, 693 F.3d at 714; *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Here, the only issues for the Court are (1) whether the ALJ properly assessed Ms. Foster's severe impairments at Step 2, and (2) whether the ALJ reasonably determined Ms. Foster's RFC.

### A

Ms. Foster alleges that the ALJ failed to properly assess additional severe impairments at Step 2. [R. 10 at 6.] To that point, she believes that the ALJ should have considered her diabatic neuropathy and left foot and ankle severe impairments. Ms. Foster fails to show that those impairments were not considered or that the failure to consider them would be in error.

At Step 2, the claimant bears the burden of proving that her impairments are severe. *Jones*, 336 F.3d at 474. But this step is a "*de minimus* hurdle in the disability determination process." *Higgs*, 880 F.2d at 862. An ALJ should not conclude that a claimant's condition is non-severe if the ALJ "is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities." SSR 85-28, 1985 WL 56856 at *12 (Jan. 1, 1985). If the effect of the claimant's impairments is not clear, the ALJ should continue the five-step evaluation. *Id.* And, Judge Reynolds did.

Ms. Foster begins by alleging that her diabetic neuropathy was a seventh severe condition. That claim, however, ignores the ALJ's determination that she had "insulin dependent type II diabetes mellitus with possible neuropathy in the hands and feet"—or a finding that her

5

neuropathy was a severe impairment. [Tr. 14.] To that point, the ALJ noted that "[Ms. Foster's] overall physical examination, including cardiovascular, vascular, *extremity* and psychiatric evaluation, *was normal.*" *Id.* at 15 (emphasis added). Therefore, the ALJ appropriately considered Ms. Foster's neuropathy. And, to the extent the ALJ did not explicitly cite to every record or piece of evidence, that is not required in making a determination of disability. *See Bosely v. Comm'r of Soc. Sec. Admin.*, 397 Fed.Appx. 195, 199 (6th Cir. 2010) (unpublished) ("Neither the ALJ nor the Council is required to discuss each piece of data in its opinion, so long as they consider the evidence as a whole and reach a reasoned conclusion.").

Ms. Foster's also believes that her left foot and ankle impairments should have been classified as a severe impairment. [R. 10 at 8.] Ms. Foster, however, has not presented evidence which would result in a consideration of her left foot and ankle impairments as severe. And, "issues not fully developed and argued to be waived." *Brindley v. McCullen*, 61 F.3d 507, 509 (6th Cir. 1995); *see e.g.*, *United States v. Layne*, 192 F.3d 556, 566 (6th Cir. 1999) (stating that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation are deemed waived.") Since Foster has failed to adequately support her argument, the Court considers it waived.

In any event, Ms. Foster cannot show any prejudice from the ALJ's failure to define some impairments as severe. Indeed, a failure to declare some impairments as "severe at step two . . . is legally irrelevant." *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008). Here, the ALJ continued the five-step analysis and considered Ms. Foster's impairments when considering her RFC.

**B**

Next, Ms. Foster alleges that the ALJ improperly weighed her subjective assessments of

pain and other symptoms. [R. 10 at 8.] In the course of a disability determination, an ALJ is required to consider subjective allegations of pain, symptoms, and limitations caused by a claimant's impairment. 20 C.F.R. § 416.929(a). However, an "individual's statements as to pain or other symptoms shall not alone be conclusive evidence of disability…" 42 U.S.C. § 423(d)(5)(A). The Regulations prescribe a two-step process for assessing a claimant's subjective allegations of pain and other symptoms. 20 C.F.R. § 416.929(c)(1). The Sixth Circuit in *Moruzzi v. Commissioner of Social Security* described it as follows:

> We are to first "examine whether there is objective medical evidence of an underlying medical condition." *Buxton*, 246 F.3d at 773 (quoting *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986)). "If there is, we then examine: (1) whether this evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain."

759 Fed. Appx. 396, 403 (6th Cir. 2018).

At the first step, the ALJ found that Foster's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." [Tr. 18.] However, Foster failed to satisfy step two because her alleged "intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" *Id.* At this step, the record reflects two major inconsistencies. First, Ms. Foster complained of her "long history of right knee and right leg pain," but her "right knee was assessed as normal. *Id.* Second, she reported sleep difficulty, but the "treatment record from the Total Lung Care and Sleep Center shows the claimant takes 15 minutes to fall asleep." *Id.*

Even if Ms. Foster is correct, she cannot show she was harmed by the ALJ's assessment of her impairments. The ALJ's RFC finding accommodates Foster's allegedly "disabling pain." The highly restrictive RFC called for sedentary work, *see* 20 C.F.R. § 416.967(a), with numerous additional conditions tailored to her circumstances. Any of Ms. Foster's difficulties with

7

standing or walking are accommodated by the ALJ's determination that she could not "stand[] or walk[] in excess of one hour without interruption[.]" [Tr. 17.]  And, Ms. Foster's complaints about pain while bearing weight, [Tr. 721]; are factored into the RFC's finding that she "lift[] no more than 10 pounds at a time." 20 C.F.R. § 416.967(a).  Lastly, the pain Foster feels when pressing on a gas pedal was dealt with insofar as the RFC expressly prohibits "operation of foot pedal controls." [Tr. 17.]  All of Ms. Foster's subjective complaints were appropriately considered by the ALJ.

Ms. Foster's last allegation is that the ALJ failed "to find that [she] met the highest range in the highest category of obesity[.]" [R. 10 at 10.]  She is wrong.  In assessing Foster's RFC, the ALJ found that she had a "BMI in excess of 40," which was the highest level recognized by Social Security at the time.[2]  And, Ms. Foster's particular BMI or weight level does not establish her "obesity as a 'severe' or 'not severe' impairment." 84 FR 22924 at *22925.  "*Obesity is not a listed impairment*; however, the functional limitations caused by the [medically determinable impairments] of obesity, alone or in combination with another impairment(s), may medically equal a listing." *Id.* (emphasis added).  The ALJ appropriately considered the functional limitations caused by Ms. Foster's obesity.  [Tr. 16-17.].

Ms. Foster allegation continued that she "cannot ambulate effectively given her physical size." [R. 10 at 10.]  The record suggests otherwise.  If her obesity prevented her from walking, her treating physicians would not have placed her on a walking regimen, or told her to "kick up her activity level." [Tr. 15.]  Further, the record shows that Foster could: picks things up around the house; vacuums; do the laundry; cleans surfaces; run errands and shop; and take her children to school.  [Tr. 15.]  All these activities belied any argument that she was unable to ambulate

---

[2] The Ruling, 2002 SSR LEXIS 1 at *4, on which the Social Security Administration's Brief relies, has since been updated with the Ruling 84 FR 22924.

effectively. Accordingly, the ALJ found that the functional limitations of Foster's obesity, "individually and in combination with other impairments," did not qualify as a listed impairment. 84 FR 22924 at *22925; [Tr. 17.] Foster's already highly restrictive RFC was properly assessed.

## III

Longstanding Sixth Circuit precedent holds that as long as the ALJ's decision is supported by substantial evidence, "reversal would not be warranted even if substantial evidence would support the opposite conclusion." *Bass*, 499 F.3d at 509. Upon review, the Court finds that the ALJ's determination that Ms. Foster was not disabled starting on October 21, 2014, is supported by substantial evidence in the record. Therefore, the ALJ was justified in denying Ms. Foster's application for a period of disability and disability insurance benefits. Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1. The Plaintiff's Motion for Summary Judgment [**R. 10**] is **DENIED**;

2. The Commissioner's Motion for Summary Judgment [**R. 12**] is **GRANTED**; and

3. **JUDGMENT** in favor of the Commissioner will be entered contemporaneously herewith.

This the 15th day of August, 2019.

Gregory F. Van Tatenhove
United States District Judge